Donald SALISBURY, et al., Plaintiffs,

v.

Dorothy L. CHAPMAN, et al., Defendants.

No. 81 C 2157.

United States District Court, N. D. Illinois, E. D.

Oct. 28, 1981.

Michael F. Gulo; M. G. Gulo & Associates, Ltd., Streator, Ill., Edwin R. McCullough, Chicago, Ill., for plaintiffs.

Thomas B. Cassidy, Cathleen M. Keating, Martin, Craig, Chester & Sonnenschein, Chicago, Ill., for defendants First Federal Savings & Loan Ass'n of Ottawa, and Richard E. Farrell and William A. Bach.

Lawrence H. Eiger, Anthony C. Valiulis, Jill Glaser, Much, Shelist, Freed, Denenberg, Ament & Eiger, P.C., Chicago, Ill., for defendants Chapman Realty, Lloyd Chapman, and Edward Chapman.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Donald Salisbury and a number of other plaintiffs, all of whom claim to be defrauded purchasers in real estate transactions, sue three distinct groups of defendants. Plaintiffs assert claims under the Racketeering Influenced and Corrupt Organization provisions of the Organized Crime Control Act of 1970 ("RICO"), 18 U.S.C. §§ 1961 et seq., and pendent state claims. Defendants have moved to dismiss all claims under Fed. R.Civ.P. 12(b)(6) for failure to state a claim upon which relief may be granted.

For the reasons stated in this memorandum opinion and order, plaintiffs have failed to state a cause of action under RICO (their only federal claim). Accordingly no federal underpinning remains to support consideration of the pendent claims. This Court therefore dismisses not only the RICO claim but this entire action.

### Facts [1]

All plaintiffs' claims stem from the purchase of real estate (primarily in Streator,

---

1. As always, the well-pleaded allegations of plaintiffs' Complaint (though exceedingly pro- lix) are accepted as true upon these motions to dismiss.

Illinois) by defendants Laurel Chapman, Jr. ("Chapman") and Dorothy Chapman (collectively "Chapmans") followed by its resale to plaintiffs. Plaintiffs claim that Chapmans acted on behalf of defendant Chapman Realty ("Realty," a partnership in which Chapman was one of three partners) and Realty's franchisor, Realty World Midwest, Inc. Chapman's purchases were financed through a series of loans by defendants First Federal Savings & Loan Association of Ottawa ("First Federal") and arranged through First Federal's officers, defendants Richard Farrell and William Bach.

Plaintiffs allege that all defendants conspired to engage in a "real estate speculation scheme." Defendants assertedly agreed (Complaint ¶ 29) that Chapman would buy the parcels "at certain prices, and then he would enter into long-term contracts with third parties for sale of said parcels at higher prices and higher interest rates, with monthly payments high enough to produce a cash flow substantially in excess of the monthly payments required by said loan agreements with [First Federal] thereby profiting each of the defendants."

That agreement alone is not challenged as illegal. Rather plaintiffs' claim relies on First Federal's position as mortgagee and Chapman's non-disclosure of that position to plaintiffs. First Federal obtained and recorded mortgages against all the real estate. Through Chapman's "concealment" of First Federal's prior lien on each parcel, Chapman was able to obtain purchasers (plaintiffs). Chapman's resales created the potential for a positive cash flow from the real estate, in turn enabling Chapmans (who previously had financial difficulties

known to First Federal) to repay the loans from First Federal.

Plaintiffs' action was filed in response to First Federal's state foreclosure proceedings brought after Chapmans defaulted on their notes to First Federal. Plaintiffs seek injunctive relief as well as damages.

### Plaintiffs' RICO Claim

█ Only a single federal claim is proffered by plaintiffs' 45-page Complaint: one under RICO. RICO does not contain any substantive prohibitions unknown to other sections of federal criminal law. Instead it confers upon the victims of certain criminal violations the right to proceed in a civil suit against the offenders. 18 U.S.C. § 1964(c).

█ Acknowledging that limitation, plaintiffs charge that the alleged real estate speculation scheme involves mail fraud as defined in 18 U.S.C. § 1341 (all subsequent citations to Title 18 in this opinion will be simply "Section—"). Were that so plaintiffs might have a colorable civil claim under RICO against defendants, because mail fraud is included within the broad sweep of the RICO statute. Sections 1961(1)(B), 1962(a). *See Parnes v. Heinold Commodities, Inc.,* 487 F.Supp. 645 (N.D.Ill. 1980). Plaintiffs' difficulty however is that they do not come even close to making out a mail fraud case against defendants on which plaintiffs are entitled to sue.[2]

█ Under the case law in this circuit, mail fraud consists of two elements:

(1) a scheme to defraud; and

(2) use of the mails in furtherance of that scheme.

---

**2.** RICO claims must also involve defendants' participation in the affairs of an "enterprise." *United States v. Turkette,* —— U.S. ——, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981). Three possible "enterprises" are involved here: First Federal, Realty and Realty World. As for the first, the discussion in the text of the opinion discloses why plaintiffs cannot claim harm from alleged mail fraud violations by that "enterprise." As for the second, Fed.R.Civ.P. 9(b) mandates particularly in pleading fraud. Each of the *documents* attached to the Complaint reflects Chapman or Chapmans *individually* to

have been the persons with whom plaintiffs dealt, and the Complaint's allegations reflect such personal negotiations as well. Plaintiffs cannot simply rely on conclusory allegations as to "benefits" of the transactions to transform Chapmans' individual fraudulent conduct into partnership activity simply because one of the defrauders was also a member of the Realty partnership. As for the third, its relationship (as the franchisor of Realty to permit its use of the registered trademark "Realty World") is so attenuated as to make plaintiffs' claim frivolous.

*United States v. George*, 477 F.2d 508, 511 (7th Cir. 1973). As Judge Marshall of this District Court put it at page 9 of his opinion in *Katzen v. Continental Illinois National Bank & Trust Co.*, No. 80 C 1378 (August 14, 1980):

> This circuit under the *George* doctrine ... has given an expansive interpretation to the scheme and artifice to defraud necessary to sustain a prosecution for mail/wire fraud.

But a comparison of plaintiffs' allegations with the *George* facts shows that even *George's* "expansive" approach cannot avail plaintiffs. There the Court held that the actions of a trusted corporate employee in receiving kickbacks from a supplier and failing to disclose them to his employer were within the "scheme or artifice" requirement of Section 1341, as were the actions of the supplier and a cooperating "middle man." All such "non-disclosure" cases, however, involve an abuse of trust by at least one party to the scheme. *See United States v. Bush*, 522 F.2d 641, 646 (7th Cir. 1975); *United States v. Keane*, 522 F.2d 534 (7th Cir. 1975). Often the trust is a public one (essentially a fiduciary duty owed to the entire public), as in the *Bush* and *Keane* cases or in *United States v. Mandel*, 415 F.Supp. 997 (D.Md.1976).

Where such a public trust or other fiduciary relationship exists, courts have imposed a duty of disclosure and have held a breach of that duty (at least when "other factors" are also present[3]) to be within the mail fraud statute, *Bush*, 522 F.2d at 646. Here there was neither public trust nor other fiduciary relationship, but only an arm's length transaction for the sale of real estate.[4]

Under Illinois law the seller of real estate has no obligation to disclose to the buyer any lien of record against the property. *Collini v. Heller & Co.*, 78 Ill. App.2d 298, 223 N.E.2d 186 (1st Dist. 1966); *see also Lagen v. Lagen*, 14 Ill.App.3d 74, 302 N.E.2d 201 (1st Dist. 1973); *Waggoner v. Waggoner*, 66 Ill.App.3d 901, 23 Ill.Dec. 28, 383 N.E.2d 795 (5th Dist. 1978).[5] That doctrine exemplifies what—under the present circumstances—should be the proper test for invoking RICO. Though the mail fraud statute is broadly applied, it is not broad enough to permit prosecution for non-disclosure unless the party charged bears a public trust or at least a fiduciary relationship to the party allegedly victimized by the non-disclosure. Even drawing reasonable inference from the Complaint's well-pleaded allegations, no public trust or fiduciary obligation on the part of any defendant toward these plaintiffs can fairly be found.[6] Neither Chapman nor (a fortio-

---

3. *Bush*, 522 F.2d at 646, listed such "other factors": an attempt to cover-up through false pretenses; a taking of money or property or rights of another through the use of kickbacks, extortion, bribery, tax evasion, perjury or a violation of some state or federal statute. None of those factors is present here.

4. This Court's holding should not be misunderstood. It may perhaps be assumed arguendo that a mail fraud indictment would be sustainable for a claimed violation of First Federal's obligations to its members (see note 6). But it would be an unwarranted extension of RICO to hold that a private plaintiff not within that class may sue civilly because of that claimed violation. Section 1964(c) should be read to require a nexus between the nature of the violation of Section 1962 and the nature of the injury to the plaintiff. Put another way, plaintiffs here are not within the class sought to be protected by the mail fraud statute as plaintiffs seek to apply it here.

5. This Court has looked to Illinois cases only as exemplary of the duty-of-disclosure rule appropriate to be applied for RICO purposes. It has not of course purported to decide defendants' motions to dismiss plaintiffs' pendent claims sounding in fraud or other state grounds. Those issues remain for a state court if plaintiffs elect to refile there.

6. Plaintiffs' Complaint ¶ 30 parrots language from the mail-fraud cases, asserting the "scheme" defrauded the members of First Federal and the community at large of their right to honest conduct of First Federal's business. That allegation is tenuous indeed (conclusory in nature, it does not satisfy the "well-pleaded" requirement for purposes of admissions on a motion to dismiss). At best, however, plaintiffs do not allege themselves to be members of First Federal. As for their "community at large" allegation, it has no warrant in law here. It would, if adopted under the facts of this case, cause RICO to swallow up the whole of alleged

ri) any other defendant was therefore required to disclose First Federal's recorded mortgages to any purchaser of the real estate.

Plaintiffs' efforts here are reminiscent of those Judge Marshall dealt with in *Katzen.* There the plaintiffs also charged mail and wire fraud under RICO. They alleged that the defendant Bank had financed the purchase of valuable real estate by other defendants, even though the Bank had assertedly made a prior loan commitment to the plaintiffs concerning the same property. Common law and state claims similar to the ones in this case were made against three groups of defendants in that case as well. Judge Marshall said of the RICO claim at pages 9–10 of his opinion:

> [The *George* doctrine] has not gone as far as this complaint would have it go and we do not propose to do so. Perhaps there has been an abuse of trust here; and then, again, perhaps we have a plaintiff afflicted with naivete. Whatever, the conduct ascribed to defendants does not constitute that type of behavior which the mail/wire fraud statutes were intended to prosecute. We suggest that counsel settle down and handle this case for what it is—a commercial action involving a disappointed investor who may or may not have a claim against the defendants.

Plaintiffs here can fare no better.[7]

### Conclusion

Defendants' motions to dismiss plaintiffs' RICO-based claims are granted. Because that is the only federal claim embodied in the Complaint, *United Mine Workers v. Gibbs*, 383 U.S. 715, 726–27, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966) dictates dismissal of the action without adjudicating plaintiffs' various pendent claims. This action is therefore dismissed without prejudice to

plaintiffs' assertion of their state law claims in a state court.

common-law fraud even without the necessary elements of a fraud claim.

**7.** Plaintiffs apparently also contend (Complaint ¶ 38) that the Chapman-related defendants are liable under RICO, 18 U.S.C. § 1961(1)(D), for bankruptcy fraud, because Chapmans' recent petition in bankruptcy did not list plaintiffs as

creditors. That extraordinary claim does not explain either any basis on which plaintiffs' then-unasserted claim against Chapmans made plaintiffs their "creditors," required to be scheduled for bankruptcy purposes, or—more important—how non-scheduling works a "fraud" on the unlisted creditors.