In re Ricky Lee ZELLER and Jan Teresa Zeller, Debtors.

Rubin Castro, et al., Plaintiffs,

v.

Ricky Lee Zeller, et al., Defendants.

Bankruptcy No. 97–33080.
Adversary No. 99–3031.

United States Bankruptcy Court,
S.D. Florida,
West Palm Beach Division.

Nov. 12, 1999.

Richard D. Sneed, Jr., Ft. Pierce, FL, for plaintiffs.

John T. Chandler, Ft. Pierce, FL, for defendants.

## MEMORANDUM OF OPINION AND ORDER [1]

RANDOLPH BAXTER, Bankruptcy Judge.

This is a dischargeability action under § 523(a)(2) of the Bankruptcy Code. The Plaintiffs, Ruben and Maria Castro are judgment creditors of the Debtors. Following a trial and an examination of the record, generally, the following factual findings and conclusions of law are rendered.

Jurisdiction is proper under 28 U.S.C. 1334, with core jurisdiction acquired under 28 U.S.C. § 157(b)(2)(I) and (O).

The following facts are generally not in dispute. The state court judgments taken by the Castros against the Debtors arose from a real estate sales transaction in which a house and other real property were purchased by the Castros from the Debtors in Ft. Pierce, Florida. At the time of purchase and occupancy, the Castros were unaware of various structural defects in the home which they allege were fraudulently concealed by the Debtors. They further alleged that the Debtors made misrepresentations to them regarding the condition of the house. Subsequently, in a state court action filed by the Castros against the Debtors, a jury awarded the Castros $30,000.00 plus attorney's fees and costs totaling $54,327.37.

The Debtors filed for bankruptcy relief under Chapter 13. At the confirmation hearing on their amended plan, confirmation was denied based upon the prepetition and postpetition misconduct of the Debtors. Within their present Chapter 7 bankruptcy, the state court's award was scheduled for discharge by the Debtors. This adversary proceeding ensued.

To resolve this matter, the Court must determine whether the alleged misconduct of the Debtors, if committed, would render the Castro's jury award nondischargeable.

Under § 523(a)(2) of the Bankruptcy Code, the following is noted:

§ 523(a)(2)(A):

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

> "(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

> "(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition; . . . ."

### The State Court Judgment

The state court judgment awarding $54,377.39 to the Castros resulted from a jury trial. That judgment determined, *inter alia*, that the Debtors (1) knew of facts which they did not disclose to the Castros; (2) Such material nondisclosure affected the value of the property sold to the Castros; (3) The defects were not readily observable and were not known to the Castros; (4) That such nondisclosure was the legal cause of damages to the Castros. The total award included reasonable attorney fees and costs.

### The Testimony

The Castros purchased their home from the Debtors in 1992 and have lived there continuously with their five children. This was their first home purchase. They paid $48,000.00 for the home. The Castros are not high school graduates, lack competent fluency in the English language, and negotiated the sales transaction with the Debtors through an interpreter.

At the time of purchase, the Castros were unaware of the house's settlement problem (Castro, M. Direct). Undisputedly, the Debtors told them that the house, at the time of purchase was in perfect condition and that everything was working fine. (M. Castro, Direct). Approximately

**1.** Judge Randolph Baxter, U.S. Bankruptcy Judge, N.D.Ohio, sitting by designation.

two years after purchasing the house, they observed ceiling separation from the walls and roof; floor cracking in the kitchen, which required a floor replacement by them; numerous roof leaks; continuous settling of the house; and progressive wall cracking. The roof has been replaced by them. A video (Exh. P–11) demonstrated by the Castros confirmed the above-stated condition of the house, in addition to showing cracks along the exterior foundation, and evidence of water damage to the ceilings.

The Castros were not aware if their lender had the house inspected prior to the time of purchase. This being their first home purchase, they were not familiar with lending practices.

Upon Court inquiry, testimony revealed that nothing was said to the Castros by either Debtor regarding the settling problems experienced by the house. The Castros did not ask if there were structural defects to the house. The testimony of the Castros was credible.

The Debtors, Ricky Lee Zeller and Jan Zeller lived in the subject residence for approximately one and one-half years before they sold it to the Castros. The house was previously owned by co-debtor Jan Zeller's step-father who sold it to them. Before the Debtors acquired it, Ricky Zeller (Zeller) worked on the house with his father-in-law (William Roach) to correct certain conditions. He also was aware that Roach had previously had work performed on the house. The repair work performed by Zeller and Roach was slab and foundation work to address settling problems. Zeller and his wife, Jan, purchased the home from Roach and sold it to the Castros in 1992.

The Debtors testified that throughout their occupancy of the home, there were no recurring problems with the areas that Ricky Zeller and Roach had repaired. Two years after they had sold the house, they learned of the problems experienced by the Castros. The Castros asked him no questions regarding the structural soundness of the house. More significantly, however, he testified that he did not inform them of any problems about the house. (Zeller R., Direct). His wife testified she became aware of the settling problem from her husband, some time after they had moved into the house. Her deposition testimony, however, is to the contrary. Specifically, her husband told her that he and Roach jacked up the house, poured a slab of concrete to cap the settling area in order to level the house. (Zeller, J. Cross–Exam.). Id. Between she and her husband, they met with the Castros three or four times prior to closing the sale transaction. She also did not inform the Castros that the house had a prior settling problem. Id. She testified that they never had problems with any part of the house when they occupied it.

Rubin Castro was told by the Debtor that the house was in good condition and that the Zellers replaced the kitchen floor and installed a new porch. That testimony was unrefuted. Today, the structural condition is twice as bad as it was shown on the video (Exh. 11) which was taken approximately two years ago. As a result, the interior living conditions are poor, but the Castros have no other place to go. (Castro, R., Direct).

Castro acknowledged that he did not ask the Debtors questions about the house's structural condition. He trusted them. Id. He was unable to observe any settling problems during his visits to the house prior to purchasing the house. He remembered, however, that the walls looked newly painted. He and his six-member family lived there two years before the settling problems became evident. During that period, he only observed bubbling in the interior walls. He also was not made aware of any problems the Debtors had with the house before it was sold to them. He would not have purchased the house had he been apprised of the severe structural defects. Since the video was made, the ceilings have partially collapsed inside

the house. These stated conditions were unrefuted.

Applicable state law recognizes the lack of disclosure on the Debtors' part as constituting proscribed hidden defects. See, *Johnson v. Davis,* 480 So.2d 625, 629 (1985). In *Johnson,* the Florida Supreme Court held that "where the seller of a home knows of facts materially affecting the value of the property which are not readily observable and are not known to the buyer, the seller is under a duty to disclose them to the buyer. This duty is equally applicable to all forms of real property, new or used." Even the sales contract under which Roach acquired the house reflected the structural defects on the house. (Exh. 10). Further, the sales contract executed when Roach sold the house to the Debtors included the known structural defects on the house. (See, Exh. 9). Yet, the sales contract on which the Castros purchased the house from the Debtors was silent as to any structural defects on the house. (Exh. 1).

In view of these factual findings, the following conclusions of law are made: The subject judgment debt for which the Debtors derived seek to obtain a discharge was derived from their misconduct which evinces a false representation and a false pretense. Their informing the Castros that the house was in good or perfect condition, while knowing of the historical settling problems which predated their (the Debtors) occupancy of the house, clearly was a false pretense. Notwithstanding that the Castros did not ask them about known structural defects, even a lack of disclosure of those defects which had been repaired, constituted a false pretense. Generally, absent a duty imposed by law to disclose facts because of a peculiar relationship of the parties or a showing that a debtor has willfully concealed or omitted material facts, mere silence and failure to disclose falls short of establishing a false representation. *In re Hunter,* 780 F.2d 1577 (11th Cir.1986). In Florida, under *Johnson,* supra, however, there is

an explicit duty of a seller to disclose to a buyer of real estate "facts materially affecting the value of the property." *Johnson* at 628. In this case debtor's failure to disclose constitutes a materially false representation which precludes the discharge of indebtedness. *In re McCoy,* 114 B.R. 489, 498 (Bankr.S.D.Ohio 1990). A false pretense involves an implied misrepresentation or conduct intended to create or foster a false impression. *In re Cole,* 164 B.R. 951, 953 (Bankr.N.D.Ohio 1993). By comparison, a false representation involves an expressed misrepresentation by a debtor. *In re Begun,* 136 B.R. 490 (Bankr. S.D.Ohio 1992), citing, *In re Dunston,* 117 B.R. 632, 639–40 (Bankr.D.Colo.1990); *In re Lacey,* 85 B.R. 908 (Bankr.S.D.Fla. 1988). Both of these situations occurred in the matter at bar. The Debtors' silence about the latent structural defects was tantamount to a false pretense, while their expressions that the house was in "good" or "perfect" condition was a materially false representation as they knew of the house's inherent defects. They both knew of the falsity of the pretense and misrepresentation when made to the Castros. Moreover, their conduct in this regard was intended to deceive the Castros in order to effectuate the sale of the home. At best, the Debtors' silence in this regard demonstrated a gross and reckless disregard or indifference for the truth about the property. Under these factors, the Castros' reliance on the Debtors' statements was justifiable. Consequently, the damages they have suffered to their home is directly related to the Debtors' silence regarding the known defects. As Mr. Castro testified, he would not have purchased the house had he known of the structural defects.

Accordingly, the Plaintiffs have satisfied their burden of proof by a preponderance of the evidence. Judgment is hereby granted in favor of the Plaintiffs. The subject debt is nondischargeable under provisions of § 523(a)(2)(A) of the Bank-

ruptcy Code. Each party is to bear its respective costs.

IT IS SO ORDERED.