**In re Salvatore G. TERRANOVA, Jr., Debtor.**

**Greater Illinois Title Company, an Illinois Corporation, Plaintiff,**

v.

**Salvatore G. Terranova, Jr., Defendant.**

Bankruptcy No. 02 B 6450.
Adversary No. 03 A 2010.

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Nov. 12, 2003.

Richard L. Hirsh, Hinsdale, IL, Neal M. Goldberg, Chicago, IL, for Plaintiff.

David R. Herzog, Chicago, IL, for Defendant.

## MEMORANDUM OPINION ON DEFENDANT'S MOTION TO DISMISS

JACK B. SCHMETTERER,
Bankruptcy Judge.

This adversary proceeding arises from the Chapter 7 bankruptcy case of Debtor–Defendant Salvatore G. Terranova, Jr. ("Terranova"). Greater Illinois Title Company ("GITC") filed a three-count adversary complaint to determine whether Terranova's debts are non-dischargeable under 11 U.S.C. §§ 523(a)(2)(A) and 523(a)(6). Terranova now moves under Rule 12(b)(6) Fed.R.Civ.P. [adopted by Rule 7012 F.R.Bankr.P.] to dismiss GITC's complaint for lack of standing and failure to state a claim.

Terranova's Motion to Dismiss attached an exhibit extraneous to the pleadings. Pursuant to Federal Rule of Civil Procedure 12(b) the exhibit was excluded by order, and is not considered part of the pleadings for purposes of this motion. Terranova's arguments that rely on the excluded exhibit will also not be considered. *See Venture Associates Corp. v. Zenith Data Systems Corp.*, 987 F.2d 429, 431 (7th Cir.1993) (holding under Rule 12(b) that Courts may exclude documents placed outside the pleadings when deciding motions under 12(b)(6).)

For reasons stated herein, Defendant's Motion to Dismiss is denied as to Counts I and II and granted as to Count III.

### STANDARDS APPLICABLE TO MOTIONS TO DISMISS

Motions to Dismiss are considered under Rule 12 Fed.R.Civ.P. pursuant to Rule 7012. The purpose of the motion is to test the sufficiency of the complaint, not to decide the merits of the case. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir.1990). A motion to dismiss should be granted only if it appears beyond doubt that the plaintiff can prove no set of facts that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Venture Associates*, 987 F.2d at 431. Accordingly, well-pleaded allegations of the complaint are assumed to be true and read in the light most favorable to Plaintiff. *United Independent Flight Officers v. United Air Lines*, 756 F.2d 1262, 1264 (7th Cir.1985); *Haroco, Inc. v. American Nat'l Bank and Trust Co.*, 747 F.2d 384, 385 (7th Cir.1984), *aff'd* 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985). If a complaint contains allegations from which the trier may reasonably infer that evidence on the necessary elements of proof are available for trial, the complaint may not be dismissed. *Sidney S. Arst Co. v. Pipefitters Welfare*

*Educ. Fund,* 25 F.3d 417, 421 (7th Cir. 1994).

### ALLEGATIONS IN THE COMPLAINT

Debtor–Defendant Terranova granted a junior mortgage to Bank One formerly known as First National Bank for $25,000 to his home in Carpentersville, Illinois. Compl. at 2. The junior mortgage was recorded by the Recorder of Deeds of Kane County in 1997.

In 1999 Terranova entered into an agreement to sell his property to E. Hernandez. The agreement required, *inter alia,* that Terranova provide evidence of good and merchantable title in the form of title insurance, pay for a title insurance policy and convey title free and clear of any mortgages placed on the property. Compl. at 3. To do this, Terranova sought the services of GITC to provide title insurance and the necessary research. Compl. at 2. GITC issued a title commitment revealing a senior mortgage and easements but not the junior mortgage. Compl. Exh. A.

Terranova furnished the title commitment as evidence of good title and subsequently conveyed the property by warranty deed to Hernandez. The deed did not exclude the junior mortgage from the warranty. Compl. Exh. B. By the time of the closing the balance of the junior mortgage was over $20,000. Compl. at 3. Terranova received net proceeds of $14,607.36 from the sale but did not pay the junior mortgage debt or any portion thereof.

Terranova filed for bankruptcy protection under Chapter 7 of the Code in 2002. He included the junior mortgage in his schedule of creditors. Compl. at 5. Terranova received a discharge and his case was closed in 2002.

Hernandez subsequently sold the property and contracted with another title insurance company to provide a title commitment to show that he could convey clear title. Compl. at 3. The title commitment produced from this sale revealed the junior mortgage. Hernandez made a demand on GITC to pay the junior mortgage pursuant to his title insurance policy. GITC issued a hold harmless letter to Hernandez and his title insurance company and paid off the junior mortgage in the sum of $24,719.91. Compl. at 4. Hernandez subsequently sold the home.

GITC filed its complaint as a subrogee of the purchaser of Terranova's property, Hernandez. Compl. at 1. Counts I and II alleges intentional misrepresentation and false pretenses under 11 U.S.C. § 523(a)(2)(A). Count III attempts to allege willful injury to Plaintiff's property under § 523(a)(6).

### DISCUSSION

Jurisdiction lies under 28 U.S.C. § 1334 and referral by the District Court under Internal Operating Procedure 15(a). This matter constitutes a core proceeding under 28 U.S.C. § 157(B)(2)(I).

#### A. STANDING TO BRING A FALSE PRETENSE AND FALSE REPRESENTATION CLAIMS IN COUNTS I AND II

■ Terranova asserts that GITC lacks standing to bring a claim under 523(a)(2)(A) because (1) the Complaint does not plead evidence of fraud, and (2) GITC has not met the requirements under Illinois law to sue as subrogee.

■ To have standing, a plaintiff must have an injury that is concrete, particularized and actual or imminent rather than conjectural or hypothetical; a causal connection between the injury and the challenged conduct, such that the injury may be fairly traceable to that conduct; and a likelihood if the other matters are proven

that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); *Perry v. Sheahan,* 222 F.3d 309, 313 (7th Cir.2000). Terranova argues that he did not have an affirmative duty to reveal the existence of the junior mortgage and therefore he did not make any false representations or false pretenses. As a result, he contends that GITC's financial loss cannot be attributed to his conduct. Def.'s Motion to Dismiss at 3–4.

Terranova relies on *Salisbury v. Chapman,* 527 F.Supp. 577, 580 (N.D.Ill.1981) for the proposition that a seller of real estate has no obligation to disclose to the buyer any lien of record against the property. *Salisbury* addressed claims under the Racketeering Influenced and Corrupt Organization provisions of the Organized Crime Control Act of 1970 ("RICO"), 18 U.S.C. 1961 *et seq.* and pendent state claims. In that opinion, District Judge Shadur determined the proper test for invoking RICO in civil cases dealing with non-disclosure and looked to Illinois court opinions involving duties of disclosure. *Id.* at 581 n.5. The *Salisbury* opinion cited *Collini v. Heller & Co.,* 78 Ill.App.2d 298, 223 N.E.2d 186 (1st Dist.1966) as establishing under Illinois law that a seller of real estate has no obligation to disclose to the buyer any lien or record against the property. The opinion's characterization of *Collini* is not persuasive since it expressly declined to address claims sounding in fraud or other state law grounds. *Salisbury,* 527 F.Supp. at 581 n. 5.

■ Terranova concedes that *Collini* was limited to RICO claims but contends that the concept that a seller has no obligation to disclose liens is well established in Illinois law. Def.'s Reply Mem. Supp. of Motion to Dismiss at 2, points out that Illinois courts have long held purchasers to be chargeable with knowledge of all matters disclosed by the public record, including tax valuations of property and title to real estate which the seller did not disclose. *Lenzi v. Morkin,* 103 Ill.2d 290, 469 N.E.2d 178, 179, 82 Ill.Dec. 644 (1984); *Bradley v. Lightcap,* 202 Ill. 154, 67 N.E. 45, 50 (1903). The problem with this argument is that Terranova did have a duty to disclose the junior mortgage; a duty that arose from specific contractual obligations in the sales contract and also statutory duties upon his conveyance of title by warranty deed. The sales contract required Terranova to convey the property free and clear of any mortgages (Compl. at 3), and the warranty deed conveying the property title was modeled after 765 ILCS 5/9 (Compl.Exh.B).

Under Illinois law any deed that follows the substance of the statutory form of a warranty deed covenants that the property was free from all encumbrances at the time of making and delivery of the deed. 765 ILCS–5/9; Illinois Jurisprudence, Property § 12.5 (2003). 765 ILCS 5/9 provides that the covenant against encumbrances is obligatory and binding as if written in the deed. Because Terranova had executed the undisclosed junior mortgage before he conveyed the property through warranty deed, the Complaint has alleged sufficient facts to suggest that Terranova willfully breached these obligations.

Furthermore, GITC has alleged sufficient facts to suggest its financial injury is fairly traceable to Terranova's conduct. Terranova withheld information on the junior mortgage, causing a subsequent purchaser to buy the house and assume liability for the junior mortgage. The subsequent purchaser sought relief from GITC, which paid the junior mortgage and now seeks relief from Terranova.

■ In order to state a claim for subrogation under Illinois law, a party must

allege: (1) a third party must be primarily liable to the insured for the loss; (2) the insurer must be secondarily liable to the insured for loss under an insurance policy; and (3) the insurer must have paid the insured under that policy, thereby extinguishing the debt under the policy. *Beneficial Franchise Co. v. Bank One, N.A.,* 2001 U.S. Dist. LEXIS 12006 (N.D.Ill. 2001) (quoting *State Farm Gen. Ins. Co. v. Stewart,* 288 Ill.App.3d 678, 686, 681 N.E.2d 625, 631, 224 Ill.Dec. 310 (1st Dist. 1997)). Terranova is alleged to be contractually liable to Hernandez for breach of warranty and other claims. GITC became liable to Hernandez through the title insurance policy for claims arising from liens that were of record and not removed or paid off. When GITC paid the junior mortgage that payment extinguished the lien and debt of Terranova. Pl.'s Resp. To Motion to Dismiss at 10.

Terranova insists that GITC cannot be subrogated to Hernandez's contractual rights because he claims not to be responsible for the loss; he argues that GITC's own failure to discover the junior mortgage actually caused the loss. Def.'s Motion to Dismiss at 4–5. The determination of fault and causation depend on whether GITC followed customary business practices in conducting the title search. That is a factual issue and cannot be decided here. At this point, GITC has alleged sufficient facts to maintain standing as a subrogee.

### B. *CLAIM FOR FALSE REPRESENTATION AND FALSE PRETENSES IN COUNTS I AND II*

▉▉▉ Under 11 U.S.C. § 523(a)(2)(A),

A discharge does not discharge an individual from any debt—

for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

Proof of false pretenses and false representation require a plaintiff to prove by a preponderance of the evidence that (i) the debtor made false statements which he knew to be false, or which were made with such reckless disregard for the truth as to constitute willful misrepresentations; (ii) the debtor possessed the requisite scienter, i.e. he actually intended to deceive the plaintiff, and (iii) to his detriment, the plaintiff justifiably relied on the representations. *Field v. Mans,* 516 U.S. 59, 116 S.Ct. 437, 446, 133 L.Ed.2d 351 (1995); *In re Mayer,* 51 F.3d 670, 673 (7th Cir.1995), cert. denied 516 U.S. 1008, 116 S.Ct. 563, 133 L.Ed.2d 488 (1995).

#### 1. *False Statements*

Terranova contends that he had no duty to disclose the mortgage, therefore he did not make a false representation. This argument has been rejected above. Alternatively, Terranova contends that even if he made representations in the deed, these representations were not expressly made and are therefore insufficient to uphold a claim for false representation. Def.'s Motion to Dismiss at 7. This contention is not valid. Terranova's duty to disclose arose not only from the inference from pleadings in the Complaint that he knew that the title insurer and subsequent purchasers were acting without knowledge of the junior mortgage, but also from the fact that he affirmatively represented in the deed that no such liens existed.

Where an independent duty exists to disclose, failure to disclose has been recognized as actionable under section 523(a)(2)(A). *Trizna v. Malcolm (In re Malcolm),* 145 B.R. 259, 263 (Bankr. N.D.Ill.1992). Terranova's knowing failure to disclose the junior mortgage he had

signed suggests that he may have intended to create and foster a false impression that none existed. *Haeske v. Arlington (In re Arlington)*, 192 B.R. 494, 498 (Bankr. N.D.Ill.1996).

Finally, Terranova asserts that he could not have made a false representation since his mortgage was a matter of public record. The public record is not determinative. The issue is whether Terranova had a duty to disclose and whether he breached that duty in such a manner as to fall under purview of § 523(a)(2)(A).

### 2. Intent

Terranova contends that scienter required under 523(a)(2)(A) cannot be inferred from the allegations of the complaint. Def.'s Motion to Dismiss at 8. He argues that the circumstances of this case are similar to those of *Hartford Police F.C.U. v. DeMaio (In re DeMaio)*, 159 B.R. 383 (Bankr.D.Conn.1993). In *In re DeMaio*, the debtor-defendant's attorney negligently failed to pay off the debtor's mortgage from proceeds of the sale of the debtor's home. The debtor retained the proceeds but did not pay the mortgage. The mortgage creditor subsequently filed a complaint for nondischargeability under 523(a)(2)(A). The Court held that the mortgage creditor was not entitled to a finding of nondischargeability, noting that the plaintiff did not show that the debtor fraudulently obtained the funds, and that the debtor simply capitalized on the attorney's error. *Id.* at 385. *In re DeMaio* is not applicable to a 12(b)(6) motion since that case was decided after trial and a full presentation of evidence and proofs. Defendant Terranova cannot before trial win a finding of dischargeability as a matter of law.

### 3. Reliance

Terranova contends that GITC could not have relied on his statements since his mortgage was a matter of public record and was discoverable by means of a simple title investigation. Def's. Motion to Dismiss at 9–10. This contention essentially disputes the level of due diligence exercised by GITC in conducting the title search. Such factual disputes are usually reserved for trial.

There is however, decisional support for Terranova's reliance argument.

In *Life Title Ins. Co. of Dallas v. Kisich (In re Kisich)*, 28 B.R. 401 (9th Cir. BAP 1983), the Internal Revenue Service had recorded a lien against a residence owned by the debtor, and the title company failed to uncover the lien during a title search immediately prior to the sale of the house. There was a dispute about whether the debtor disclosed the lien. The Bankruptcy Appellate Panel of the Ninth Circuit held that it is patently unreasonable for the appellant (title insurer) to have relied on the debtors' representations since the very essence of a title insurer's function is to ascertain the state of title to property:

> The primary motivation in purchasing title insurance is to protect against the very kind of problem here involved. The [subsequent purchasers] did not rely on the representations of the debtors regarding title but rather on the conclusions of the [the title company] after it conducted a title search. Furthermore, it is patently unreasonable for the [the title company] to have relied on the debtors' representations since the very essence of a title insurer's function is to ascertain the state of the title to property. Should a cloud upon the title subsequently be discovered, the buyer has recourse against the insurer under the policy ... Section 523(a)(2) was never intended to be used by errant insurers to shift the risk of loss to the debtor. *Kisich,* 28 B.R. at 403, 404.

A subsequent opinion has followed *Kisich, Chicago Ins. Title Co., v. Dewey,* U.S. Dist. LEXIS 19724 (affirming Bankruptcy Courts approval of *Kisich),* while other bankruptcy courts have questioned its broad holding. *Commonwealth Land Title Ins. Co. v. Homer (In re Homer),* 168 B.R. 790 (Bankr.N.D.Ga.1994) (disagreeing with the broad statement made in *Kisich* to the extent it implies that lenders and title insurers are always charged with knowledge of the public record); *Rainier Title Co. v. Demarest (In re Demarest),* 176 B.R. 917 (Bankr.W.D.Wash.1995) ("majority's view that 523(a)(2) was never intended to be used by errant insurers to shift the risk of loss to the debtor is unsupported by authority or reason.").

Assuming *arguendo* that *Kisich's* reasoning had merit, the specific circumstances pleaded in this case compel a different conclusion. In *Kisich,* the insurer did not prove that the debtor deliberately concealed the IRS lien or that the debtor knew that the insurer was unaware of the lien; to the contrary, the debtor's statement that she revealed the possible existence of the lien was uncontroverted. Thus there was no evidence of false representation in that case, and the Panel opinion did not need to reach the issue of reliance. *In re Demarest,* 176 B.R. at 921. In contrast, the Complaint indicates that Defendant misrepresented absence of any junior lien.

■ Moreover, the Panel in *Kisich* used a reasonableness standard for reliance. *Kisich,* 28 B.R. at 403. The Supreme Court has since held that reliance on a false pretense or false representation must be "justifiable." *Field v. Mans,* 516 U.S. 59, 74–75, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995). The justifiable standard imposes no duty to investigate unless the likely falsity of the representation is apparent. Whether a party justifiably relies on a misrepresentation is determined by looking at the circumstances of a particular case and the characteristics of a particular plaintiff and not by an objective standard. *Id.* at 71, 116 S.Ct. 437. GITC has therefore adequately pleaded a valid claim under 523(a)(2)(A) for false representations and false pretenses.

## C. *CLAIM IN COUNT I FOR ACTUAL FRAUD UNDER 11 U.S.C. 523(a)(2)(A)*

Terranova argues that GITC failed to comply with the higher pleading requirements for fraud under Federal Bankruptcy Rule 7009, and therefore any claim for fraud should be dismissed. Def.'s Motion to Dismiss at 4.

■ At this stage it is not necessary that a plaintiff expressly plead each element of fraud, so long as the circumstances which may constitute fraud have adequately been set forth. *See Midwest Grinding, Inc. v. Spitz,* 976 F.2d 1016, 1020 (7th Cir.1992). A complaint need only allege the basic outline of fraud and indicate who made the misrepresentations and the time and place the misrepresentations were made. *Vicom v. Harbridge Merchant Servs., Inc.,* 20 F.3d 771, 777 (7th Cir.1994) (quoting *Bankers Trust Co. v. Old Republic Ins. Co.,* 959 F.2d 677, 683 (7th Cir.1992)); Rule 9(b) requires the plaintiff to state "the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." However, mere conclusory allegations without a description of the underlying fraudulent conduct will not satisfy the requirements of Rule 9(b) and may warrant dismissal. *Veal v. First Am. Sav. Bank,* 914 F.2d 909, 913 (7th Cir.1990). Actual fraud asserted under 523(a)(2)(A) requires a plaintiff to allege that (1) a fraud oc-

curred; (2) the debtor was guilty of intent to defraud; and (3) the fraud gave rise to the debt that is the subject of the discharge dispute. *McClellan v. Cantrell*, 217 F.3d 890, 893–894 (7th Cir.2000). *McClellan* further explained that

> "[f]raud is a generic term, which embraces all the multifarious means which human ingenuity can devise and which are resorted to by one individual to gain an advantage over another by false suggestions or by suppression of truth." *Id.* at 893.

▮ GITC has alleged enough to show the possibility of fraud in Terranova's actions. Neither the title commitment nor the subsequent warranty deed disclosed the existence of the junior mortgage. Compl. at 3. Terranova did not take any steps to appraise the purchaser of existence of the mortgage that he signed. Compl. at 3.

Based on the allegations, it is plausible to infer that Terranova may have intended to gain a financial advantage over GITC, the purchaser (and ultimately to Plaintiff) by withholding information regarding the junior mortgage. This type of conduct could well fall within the definition of actual fraud described in *McClellan*, i.e. use of a means to gain an advantage over another by suppression of a truth. *See also Bletnitsky v. Jairath (In re Jairath)*, 259 B.R. 308 (Bankr.N.D.Ill.2001) and cases cited. GITC has alleged sufficient facts to state a claim for actual fraud under 523(a)(2)(A).

### D. FAILURE TO STATE A CLAIM FOR INJURY UNDER 523(A)(6) IN COUNT III

Under 11 U.S.C. § 523(a)(6),
"(a) A discharge ... does not discharge an individual debtor from any debt
(6) for willful and malicious injury by the debtor to another entity or to the property of another entity."

▮ A debt for willful and malicious conversion of claimant's property is nondischargeable under § 523(a)(6). *First Nat'l Bank of Red Bud v. Kimzey (In re Kimzey)*, 761 F.2d 421, 424 (7th Cir.1985). A conversion is any unauthorized act, which deprives an owner of property permanently or for an indefinite period of time. *In re Thebus*, 108 Ill.2d 255, 259, 91 Ill.Dec. 623, 625, 483 N.E.2d 1258, 1260 (1985). The conduct causing the conversion must be malicious and willful. *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 331, 55 S.Ct. 151 (1934) ("A wilful and malicious injury does not follow as of course from every act of conversion, without reference to the circumstances. There may be a conversion which is innocent or technical."). Therefore, to establish a claim for conversion under § 523(a)(6) the plaintiff must prove (1) that the debtor caused the conversion of plaintiff's property; (2) that the debtor's actions were malicious and (3) the debtor's actions were willful. *Lincoln Land FS, Inc. v. Bennett (In re Bennett)*, 293 B.R. 760, 763 (C.D.Ill.2003).

▮ GITC argues that the mortgage agreement between Bank One and Terranova required that the junior lien attach to proceeds of any sale. By failing to remit the sale proceeds to Bank One, Terranova is alleged to have willfully and maliciously converted these proceeds for his personal use. Compl. at 9.

Terranova contends that GITC fails to state a claim for conversion under 523(a)(6) since he did not convert any money or property belonging to either GITC or Hernandez. He argues that even if *arguendo* he did convert the property of Bank One, GITC cannot seek relief on Bank One's behalf. Def.'s Reply Mem. Supp. of Motion to Dismiss at 3–4.

▮ Plaintiff's theory applies only to dischargeability actions brought by se-

cured creditors themselves. GITC has not cited authority holding that a creditor may seek an exception from discharge for debts owed to another creditor. Indeed, § 523(c)(1) provides otherwise; the only person who can seek to exempt a debt from dischargeability is "the creditor to whom such debt is owed." 11 U.S.C. § 523(c)(1); *See Greiger v. Paull (In re Greiger)*, 2002 WL 193566 at *1, 2003 U.S. Dist. LEXIS 1824 at *3–5 (N.D.Ill.2002). The complaint here does not show that GITC or its subrogor has or had some ownership or possessory interest in the sale proceeds. Absent this interest, § 523(c)(1) prevents GITC from asserting the rights of Bank One.

GITC has failed to state a claim for conversion under § 523(a)(6), and therefore Count III will be dismissed.

### CONCLUSION

For reasons stated the Defendant's Motion to Dismiss will by separate order be denied as to Counts I and II and granted as to Count III.