In re John E. WILKEN, Debtor.

Vincent S. Street and Elizabeth A. Street, Plaintiffs,

v.

John E. Wilken, Defendant.

Bankruptcy No. 8:05–bk–8514–PMG.
Adversary No. 8:05–ap–582–PMG.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Sept. 6, 2006.

---

Vincent S. Street, pro se.

Elizabeth A. Street, pro se.

John E. Wilken, pro se.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND MEMORANDUM OPINION

PAUL M. GLENN, Chief Judge.

**THIS CASE** came before the Court for a final evidentiary hearing in the above-captioned adversary proceeding.

The Plaintiffs, Vincent S. Street and Elizabeth A. Street, commenced this action by filing a Complaint against the Debtor, John E. Wilken. In the Complaint, the Plaintiffs assert that they "were awarded a Judgment against the Defendant/Debtor in the amount of $106,000.00, for punitive and compensatory damages, either of which is not an allowable discharge in this Court."

### Background

Carol Wilken was the owner of a home located at 1205 Midland Avenue, Akron, Ohio. The Debtor, John Wilken, is Carol Wilken's son. Carol Wilken had purchased the property for the purpose of renting the home to the Debtor, and he resided at the home until the late summer or fall of 2001.

On October 4, 2001, the Plaintiffs executed a Real Estate Purchase Agreement pursuant to which they contracted to purchase the Midland Avenue property from Carol Wilken for the sum of $136,300.00. The "projected closing" was scheduled for "11/10/01 or before." On October 6, 2001, Carol Wilken signed the Agreement as the Seller.

The Plaintiffs were represented by Rhonda Moore, and Carol Wilken was represented by Alan Horvath, as separate real estate agents in connection with the transaction.

On October 12, 2001, the Plaintiffs employed DC Home Inspection Services to perform an inspection of the property, as permitted by the terms of the Purchase Agreement.

The inspection was performed by DC Home Inspection Services on October 13, 2001. A written Report was prepared at the time that the inspection was conducted, and the Report reflects that the Buyer, the Buyer's agent, and the Seller were all present during the inspection.

On October 14, 2001, the Plaintiffs signed an Addendum to the Real Estate Purchase Agreement. The Addendum provides that "after home inspection with D.C. Home on Saturday, Oct. 13, 2001—buyers are requesting" a heating certification regarding the furnaces and hot water tank, the completion of certain items by a licensed electrician, and the repair of the damper on a fireplace in the basement.

Carol Wilken, as the Seller, signed the Addendum on October 22, 2001.

The sale of the property subsequently closed, and the Plaintiffs took possession of the property in November of 2001.

On April 26, 2002, the Plaintiffs filed a Complaint in the Court of Common Pleas in Ohio against Carol Wilken, the Debtor, Alan Horvath, and Sentinel Real Estate Services, Inc. The Complaint contained five counts: (1) an action for breach of contract against Carol Wilken; (2) an action for fraud against all of the defendants; (3) an action for negligence against all of the defendants; (4) an action for "liability of principal" against Sentinel Real Estate Services, Inc. and Carol Wilken; and (5)

an action for punitive damages against all of the defendants.

With respect to the Debtor, the Plaintiffs alleged in the State Court Complaint that the Debtor had been in possession of the property, and that "prior to entering into a contract for the purchase of the premises in question, Plaintiffs requested information from the Defendant John Wilken and either received untruthful information and/or insufficient information in response for matters which were material factors to the Plaintiffs when deciding to purchase the property."

On July 19, 2002, the State Court in Ohio entered a Default Judgment against the Debtor "in the amount of $56,000.00 for compensatory damages and $50,000.00 in punitive damages."

On April 28, 2005, the Debtor filed a petition under Chapter 7 of the Bankruptcy Code.

On July 28, 2005, the Plaintiffs filed a timely Complaint objecting to the dischargeability of the debt owed to them by the Debtor.

### Discussion

Section 523 of the Bankruptcy Code governs the nondischargeability of particular debts in Chapter 7 cases.

■ The Complaint filed by the Plaintiffs does not identify any specific subsection of § 523 as the basis for their contention that the debt owed to them is nondischargeable. The Plaintiffs have alleged, however, that the Debtor made certain misrepresentations of material fact concerning the property that they purchased in Ohio. Consequently, it appears that the Plaintiffs intend to rely on § 523(a)(2)(A) of the Bankruptcy Code. That subsection provides:

**11 USC § 523. Exceptions to discharge**

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

. . .

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by—

(A) *false pretenses, a false representation, or actual fraud*, other than a statement respecting the debtor's or an insider's financial condition.

11 U.S.C. § 523(a)(2)(A)(Emphasis supplied). "Courts have required a plaintiff to establish the traditional elements of common law fraud to prevail in a Section 523(a)(2)(A) action. *SEC v. Bilzerian (In re Bilzerian)*, 153 F.3d 1278, 1281 (11th Cir.1998). A plaintiff must establish: (i) the debtor made a false representation with the purpose and intent to deceive the creditor; (ii) the creditor relied on the misrepresentation; (iii) the reliance was justified; and (iv) the creditor sustained a loss as a result of the misrepresentation." *In re Maxwell*, 334 B.R. 736, 741 (Bankr. M.D.Fla.2005).

■ A plaintiff in a dischargeability action must prove each element of its cause of action by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *In re Houston*, 305 B.R. 111, 119 (Bankr. M.D.Fla.2003).

In this case, the Plaintiffs did not establish at least two elements of a cause of action under § 523(a)(2)(A) by a preponderance of the evidence. First, the Plaintiffs did not prove that the Debtor made any specific false representations regarding the Midland Avenue property. Second, the Plaintiffs did not prove that they

justifiably relied on any such representations.

## A. False representations

The Plaintiffs contend that they discovered multiple defects in the home after they purchased it in November of 2001. The defects include an aged roof, water spots that had been covered with paint, leaks in the bathrooms, and a septic system that had not received recent maintenance. (State Court Complaint, Paragraph 15). The Plaintiffs also contend that the home was infested with termites, that excess trash had been left on the premises, and that a secret "drug room" had been discovered in the home. Finally, the Plaintiffs contend that a prior owner had committed suicide in the home, and that the circumstances of the death had not been disclosed to them.

The Plaintiffs have not proven by a preponderance of the evidence, however, that the Debtor made any specific false statements regarding the conditions described above.

To support their claim, the Plaintiffs have made only general allegations that the Debtor misrepresented or withheld material information regarding the home. (State Court Complaint, Paragraph 7). The Plaintiffs provided the unsworn statement of their realtor, for example, that the Debtor "gave us information regarding the property at 1205 Midland. He lived at the residence and advised us that he did most of the work around the house, as well as scheduling maintenance issues (example: well and septic) since his mother was ill." (Plaintiff's Exhibit 5).

The Plaintiffs do not contend, of course, that the Debtor made any written representations regarding the property. The Debtor was not the seller of the property. The home was owned by the Debtor's mother, Carol Wilken, and Carol Wilken signed the Real Estate Purchase Agreement and the Addendum to the Purchase Agreement as the seller. Carol Wilken also completed and signed the Seller's Disclosure Statement regarding the condition of the property. (Plaintiffs' Exhibit 25, Deposition of Carol Wilken, pp. 29–30). The Plaintiffs did not produce any written representations by the Debtor as the basis for their Complaint.

Instead, the Plaintiffs rely on verbal representations allegedly made by the Debtor.

The Debtor was present at the time that DC Home Inspection Services inspected the home, for example, and the Plaintiffs contend that the Debtor made two verbal representations to them on that date.

According to the Plaintiffs, "Mr. Wilken told us at the home inspection that he just had the septic pumped recently." The Plaintiffs contend that the Debtor's statement was false, and that the septic system had not received any maintenance in more than three years. (Transcript, p. 17).

The Plaintiffs contend that the Debtor also made false statements regarding the prior owner's death.

At the day of our inspection, when Mr. Wilken was present we asked him about the previous owner before we moved in—before he moved in. He stated the man died. We asked how he died and he stated: He just died.

We got in a conversation, me and my wife and him, and I asked about this. And he said: No, he moved off; he got a divorce and he went and died.

. . .

Mr. Wilken had a funny look on his face and then I said: So he didn't commit suicide, did he? And he said: No.

(Transcript, pp. 20, 21). The Plaintiffs contend that the Debtor's response was false, and that they later learned that the prior owner had committed suicide in the home. (Transcript, p. 20).

The two statements described above (regarding the septic system and the prior owner's death) are the only specific representations attributed to the Debtor by the Plaintiffs.

In response to the Plaintiffs' contentions, the Debtor asserts that he had no independent contact with the Plaintiff's realtor, Rhonda Moore. The Debtor further asserts that the only communications that he had with the Plaintiffs or the Plaintiffs' agents occurred on the day that the Plaintiffs' home inspectors were present at the home, and that he "just let them go through the house amongst themselves." (Transcript, pp. 10–12, 36). With respect to the prior owner, the Debtor stated that he was never asked to explain the circumstances of his death. (Transcript, p. 41). Apart from the limited contact at the time of the inspection, the Debtor contends that his mother, as the owner of the property, dealt with the realtors and the Plaintiffs. (Transcript, p. 39).

Based on the record, the Court finds that the Plaintiffs failed to establish that the Debtor made any false representations regarding the condition of the home. Although the Plaintiffs generally alleged that the Debtor made such representations, they produced testimony as to only two specific statements attributed to the Debtor. The Plaintiffs' testimony in this regard was not corroborated by any supporting evidence, and the Debtor disputed the statements with his own testimony describing his contacts with the Plaintiffs. Under these circumstances, the Court finds that the Plaintiffs did not prove by a preponderance of the evidence that the Debtor made any specific false representa-

tions regarding the property that they purchased.

■ Further, the Plaintiffs cannot prevail in this dischargeability action by showing that the Debtor failed to disclose any material condition regarding the home. To be actionable under § 523(a)(2)(A), it is fundamental that a debtor's "failure to disclose must be about material facts and the debtor *must have the duty to disclose* such facts." *In re Sielschott,* 332 B.R. 570, 573 (Bankr.C.D.Ill.2005)(Emphasis supplied). *"Where an independent duty exists to disclose,* failure to disclose has been recognized as actionable under section 523(a)(2)(A)." *In re Terranova,* 301 B.R. 509, 515 (Bankr.N.D.Ill.2003)(Emphasis supplied). See also *In re Zeller,* 242 B.R. 84, 87 (Bankr.S.D.Fla.1999).

In this case, the Plaintiffs did not establish that the Debtor possessed an independent duty to disclose any information regarding the condition of the home. The Debtor was not the owner or seller of the property, and was not a party to the Real Estate Purchase Agreement that was signed by the Plaintiffs and Carol Wilken. Because the Debtor was not in privity with the Plaintiffs, he had no duty to disclose any information regarding the condition of the home. *Garvey v. Clevidence,* 2004 WL 2806339, at *3 (Ohio App. 9 Dist.); *Blake v. John Doe 1,* 89 Ohio App.3d 130, 623 N.E.2d 1229, 1231–32 (10 Dist.1993).

The Plaintiffs failed to prove that the Debtor made any false representations to them regarding the condition of the home, either by virtue of specific statements made at the time of the inspection, or by virtue of his failure to disclose material information prior to the closing of the sale.

### B. Justifiable reliance

■ Even if the Debtor had made false representations about the home, however,

the Plaintiffs did not establish that they justifiably relied on the representations within the meaning of § 523(a)(2)(A).

 The issue is whether the Plaintiffs' reliance, if any, was "justifiable." Generally, courts apply a subjective test to determine whether a particular creditor's reliance was "justifiable." *In re Maxwell,* 334 B.R. at 742. Justifiable reliance is determined according to an individual standard, based on the creditor's own abilities and knowledge, or the knowledge that he should have from the facts that are available to him. *In re Vann,* 67 F.3d 277, 283 (11th Cir.1995). The determination depends on a subjective standard that considers the relative experiences of the parties and their interactions with each other. *In re Finch,* 289 B.R. 638, 644 (Bankr. S.D.Ohio 2003).

To the extent that the Plaintiffs in this case relied on any representations made by the Debtor, the Court finds that such reliance was not justifiable.

The Plaintiffs knew that the Debtor was not the owner of the property. Carol Wilken signed the Real Estate Purchase Agreement and the Addendum to the Purchase Contract as the seller of the home. Significantly, Carol Wilken also signed the Seller's Residential Property Disclosure Statement that is required under Ohio law. It is clear that the Plaintiffs knew that Carol Wilken was the owner of the property, and that they were not purchasing the home from the Debtor.

The Plaintiffs' real estate agent also understood that the Debtor was not the owner or seller of the property. (Plaintiffs' Exhibit 5).

The Plaintiffs do not allege that the Debtor ever falsely identified himself as the owner of the home. Although the Debtor had occupied the home until shortly before the sale, he was no more than a tenant or volunteer in connection with the sale of the property to the Plaintiffs.

Further, the Plaintiffs do not allege that the Debtor impeded their access to the home prior to the sale, or that they received an inadequate opportunity to investigate the condition of the home. On the contrary, the Plaintiffs obtained an independent home inspection prior to closing, and personally viewed the home on at least several occasions. In fact, as a result of the inspection, the Plaintiffs' real estate agent prepared an Addendum to Sales Agreement that required Carol Wilken to make certain repairs.

The record does not indicate that the Plaintiffs were either disadvantaged or the victims of overreaching as they negotiated the purchase of the home. Their capacity is not impaired, and they employed a professional real estate agent to assist them in the transaction. They entered the Purchase Agreement with Carol Wilken, not the Debtor, as the seller of the home, and knew that the Debtor was not the owner of the property.

Based on the subjective factors present in this case, the Court finds that the Plaintiffs did not justifiably rely on any representations made by the Debtor regarding the condition of the home.

### Conclusion

The Plaintiffs seek a determination that the debt owed to them by the Debtor is nondischargeable pursuant to § 523(a)(2)(A) of the Bankruptcy Code.

The Court finds that the Plaintiffs did not prove by a preponderance of the evidence that the Debtor made any specific false representations to them regarding the condition of the home. Second, even if the Debtor made any such false representations, the Plaintiffs did not establish that they justifiably relied on the representations within the meaning of § 523(a)(2)(A).

Consequently, the debt owed to the Plaintiffs is dischargeable in the Debtor's Chapter 7 case.

Accordingly:

**IT IS ORDERED** that:

1. Final Judgment should be entered in favor of the Debtor, John Wilken, and against the Plaintiffs, Vincent S. Street and Elizabeth A. Street, in this adversary proceeding.

2. The debt evidenced by the Judgment entered on July 19, 2002, by the Court of Common Pleas, Summit County, Ohio, in the case styled *Vincent Street, et al., v. Carol Wilken, et al.,* Case No.2002 04 2407, is not excepted from the Debtor's discharge pursuant to § 523(a)(2)(A) of the Bankruptcy Code.

3. A separate Final Judgment will be entered consistent with this Opinion.